# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOPER, WILLIAMS, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Master Sergeant RAFAEL AYUSO**
**United States Army, Appellant**

ARMY 20240332

Headquarters, I Corps
Jessica Conn, Military Judge (arraignment & motions)
Pamela L. Jones, Military Judge (trial)
Lieutenant Colonel Matthew E. Dyson, Acting Staff Judge Advocate

For Appellant: Captain Jessica A. Adler, JA; Daniel Conway, Esquire (on brief, reply brief, and petition for new trial).

For Appellee: Colonel Richard E. Gorini, JA; Major Stephen L. Harmel, JA; Captain Clare M. Murphy, JA (on brief).

24 July 2026

-----------------------------------------------------
SUMMARY DISPOSITION AND ACTION
ON PETITION FOR NEW TRIAL
-----------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHLACK, Judge:

Appellant and Staff Sergeant (SSG) ■■ engaged in an adulterous relationship, ultimately resulting in appellant being found guilty of extramarital sexual conduct, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [UCMJ].[1] During presentencing proceedings, the military judge allowed SSG ■■ to provide an unsworn victim impact statement as a "victim" of appellant's extramarital sexual conduct. The military judge did so without any evidence to show SSG ■■ suffered "direct physical, emotional, or pecuniary harm as a result of" her

---

[1] Appellant was also found guilty of soliciting the distribution of a controlled substance and one specification of assault with an unloaded firearm, in violation of Articles 82 and 128, UCMJ, neither of which pertained to SSG ■■. Appellant was subsequently sentenced to a reprimand and to be reduced to the grade of E-5.

extramarital sexual conduct with appellant. *See* Rule for Courts-Martial [R.C.M.] 1001(c)(2)(A) (defining "victim").

Appellant argues, *inter alia*, the military judge abused her discretion by permitting SSG ▇ to give an unsworn statement to the court-martial as a "crime victim" under Article 6b, UCMJ, and R.C.M. 1001(c). Although we agree the military judge erred, we conclude the error did not materially prejudice appellant's substantial rights. Accordingly, we affirm.[2]

## BACKGROUND

During the charged time frame, appellant served as the first sergeant of a company assigned to Joint Base Lewis-McChord, Washington. Staff Sergeant ▇ served in the same company as a platoon sergeant.

Over the course of approximately five months, appellant and SSG ▇ engaged in a consensual extramarital sexual relationship. The majority of their encounters occurred at appellant's residence, though one sexual encounter occurred in appellant's office after duty hours. Appellant knew SSG ▇ was married to another person when he had sex with her.

After findings were announced, SSG ▇ through her Special Victims' Counsel (SVC), requested to provide an unsworn victim impact statement. Defense counsel objected, arguing SSG ▇ did not qualify as a "crime victim" within the meaning of Article 6b, UCMJ, and R.C.M. 1001(c).[3] Defense counsel emphasized appellant had been acquitted of a maltreatment charge that pertained to SSG ▇ and argued the relevant Article 134 conviction involved consensual misconduct in which SSG ▇ was a voluntary participant. In response, SSG ▇ SVC posited, "given the facts of this matter," he believed SSG ▇ to be "a victim entitled to make an unsworn statement." The military judge did not require the SVC to provide a proffer of SSG ▇ unsworn statement to the court or to identify *how* SSG ▇ was

---

[2] We have given full and fair consideration to the other assignments of error raised by appellant as well as to those matters personally submitted by him pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

[3] Article 6b, UCMJ, affords a victim the right "to be reasonably heard" at "[a] sentencing hearing relating to the offense." As noted *supra*, R.C.M. 1001(c) defines who constitutes a "victim" for a given offense.

harmed.[4] Instead, the military judge overruled the defense objection and allowed SSG ███ to make a statement as a "victim".

In her statement, SSG ███ described the emotional and professional consequences she attributed to her illicit relationship with appellant. Staff Sergeant ███ explained how she felt "stuck" with appellant, as she "had taken this mistake so far that [she] felt like [she] could never return from it," and referenced potential harm to her husband, career, family, and friends. She explained that, following the relationship, she "spiraled downward," questioning her integrity as a noncommissioned officer, believing she had failed to live according to the Army Values and the Noncommissioned Officer Creed and ultimately concluded that she should leave military service.

Appellant now argues the military judge abused her discretion by determining that SSG ███ qualified as a crime victim under Article 6b, UCMJ, and R.C.M. 1001(c).

## LAW

We review a military judge's decision to admit a victim impact statement over defense objection for an abuse of discretion. *United States v. Edwards*, 82 M.J. 239, 242-43 (C.A.A.F. 2022) (citation omitted). "Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *United States v. Green-Watson*, 85 M.J. 340, 345 (C.A.A.F. 2025) (quoting *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024)).

Article 6b(a)(4)(B), UCMJ, affords crime victims the right to be reasonably heard during presentencing proceedings. *See also* R.C.M. 1001(c)(1) (implementing UCMJ art. 6b(a)(4)(B)). Before an individual may exercise this right, a military judge must determine the individual meets the statutory definition of a "victim," as only one who has "suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense" of which the accused was found guilty may make such a statement. UCMJ art. 6b(b); R.C.M. 1001(c)(2)(A). Whether an individual satisfies this definition is a fact-intensive inquiry that requires an individualized assessment of the record.

---

[4] A copy of SSG ███ unsworn statement was not marked as an appellate exhibit (i.e., received by the court-martial) until shortly before the SVC read the statement into the record, and following another Article 39(a) session regarding the contents of the unsworn statement.

When interpreting the language and scope of Article 6b, UCMJ, and R.C.M. 1001(c), we "begin by simply reading the plain language of the rule giving effect to every clause and word," applying the "common and approved usage" of the operative word or words. *United States v. Fetrow*, 76 M.J. 181, 186 (C.A.A.F. 2017) (citations omitted).

Applying these principles to appellant's case, the operative statutory limitation is the word "direct." To be considered a victim the individual must suffer physical, emotional, or pecuniary harm directly linked to the offense of conviction. UCMJ art. 6b(a)(4)(B); R.C.M. 1001(c)(2)(A)-(B). As this court recently clarified in *United States v. Goins*, 85 M.J. 643 (Army Ct. Crim. App. 2025), pet. denied, 2025 CAAF LEXIS 1023 (C.A.A.F. 16 Dec. 2025), "[a]pplying the plain language of the rule, the test of whether a harm is direct under R.C.M. 1001(c) is whether the harm is logically and causally related to the offense of which the accused is convicted," without an "intervening cause." *Id.* at 649. Accordingly, harm that is indirect or caused by another source is legally insufficient to establish standing under the rule. *Cf. id.* at 648 (noting "direct" is defined as "proceeding from one point to another in time or space without deviation or interruption" and as "stemming immediately from a source" (citations omitted)).

## DISCUSSION

We need not decide whether SSG ▮ experienced emotional harm, nor are we well-positioned to do so. Rather, our decision in this case turns on whether the military judge abused her discretion when she determined SSG ▮ was a crime victim. We find that she did so in two separate respects: first, by failing to predicate her ruling on the evidence of record; and second, by applying "the correct legal principles to the facts" in a manner that "is clearly unreasonable." *Green-Watson*, 85 M.J. at 345.

### A. The Article 6b Ruling

### 1. Lack of an Evidentiary Record

The military judge determined SSG ▮ was a "victim" based on SSG ▮ SVC's bald assertion that she was one and without placing independent findings of fact on the record. In addition to our owing minimal deference to a ruling made in a factual vacuum, *e.g.*, *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation omitted), the military judge's *legal* determination that SSG ▮ was a victim, unsupported by the record, represents an abuse of discretion.

Without review of the proffered harm and its nexus to the criminal act, a military judge is not well-situated to decide whether the harm suffered was "direct."

By deciding this threshold issue solely on the bare legal assertion of counsel, the military judge's ruling was arbitrary, unsupported by the record, and represents an abuse of discretion.

### 2. *Erroneous Application of Law to Facts*

Assuming *arguendo* the military judge considered SSG ███ unsworn statement prior to determining she qualified as a "victim," the military judge failed to address intervening causes of harm established on the record and therefore abused her discretion. Specifically, nothing in the record shows the military judge accounted for several key factors: SSG ███ voluntary participation in crime, her subsequent regret for her informed participation, and the effects of her disclosure. The harm she described feeling after participating in the crime is not attributable to appellant's criminal conduct, but to her own conduct under the facts of this case. *See Goins*, 85 M.J. at 649 (noting direct harm is limited to the "direct result of appellant's crimes rather than the result of someone else's actions or other intervening circumstance."). While this record demonstrates that her remorse may have been genuine, the military judge's ruling overlooked that this remorse derived from her own autonomous choices rather than a direct injury resulting from appellant's participation in the affair.

Likewise, the military judge erred in treating the professional consequences SSG ███ described as direct harm. Under the *Goins* framework, these consequences occurred only after she disclosed her extramarital relationship with appellant and an administrative separation followed. The military judge failed to recognize that the post-discovery fallout under these facts was not a direct injury flowing from appellant's commission of the offense itself. Consequently, the military judge's threshold determination that appellant's offense directly caused her career or emotional harm in the manner contemplated by R.C.M. 1001(c) was unsupported by the record.

Accordingly, the record does not establish that SSG ███ suffered direct physical, emotional, or pecuniary harm within the meaning of Article 6b, UCMJ, and R.C.M. 1001(c).[5] The military judge abused her discretion by seemingly adopting an overly broad interpretation of the rule that exceeds the plain language of the text, erroneously allowing SSG ███ to exercise crime-victim rights during sentencing. We emphasize the narrowness of our holding. We need not decide whether a consenting participant in extramarital sexual conduct could ever qualify as a crime victim under

---

[5] Staff Sergeant ███ testimony on the merits included evidence of both the extramarital sexual relationship and the alleged maltreatment. None of her merits-testimony included evidence of direct harm attributable to the crime for which appellant was convicted.

Article 6b, UCMJ. We hold only that, on this record, SSG ███ did not establish the direct harm required by the rule.

### B. Prejudice

Having found error, we must determine whether it substantially influenced the adjudged sentence. *E.g.*, *Goins*, 85 M.J. at 648 (citing *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018)). To determine prejudice, we evaluate the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Barker*, 77 M.J. at 384.

Applying these factors to the present case, we find the error was harmless. Although the military judge erred by finding SSG ███ qualified as a victim, she did limit the scope of her victimhood to that of extramarital sexual relations. The severity of this charge and specification paled in comparison to appellant's assault of his wife with an unloaded firearm. Furthermore, given the absence of government sentencing evidence, and the lenient sentence ultimately imposed despite appellant's significant punitive exposure,[6] we are convinced the erroneous admission of SSG BD's unsworn statement did not substantially influence the sentence. *See Goins*, 85 M.J. at 650; UCMJ art.59(a).

### CONCLUSION

Appellant's petition for a new trial is DENIED. The findings and sentence are AFFIRMED.

Senior Judge COOPER and Judge WILLIAMS concur.

FOR THE COURT:

//JAMES W. HERRING, JR.
Clerk of Court

---

[6] Appellant could have been sentenced to a dishonorable discharge, confinement for fifteen years, total forfeitures, to be reprimanded, and reduced to the grade of E-1.